WILLIAM A. CASPER, executor,

*v.*

FRANK P. WALKER and others.

A testator gave to his wife $4,000, "the same to be put at interest in some safe investment, and secured to her during her natural life." He also gave her an annuity of $400, charged on his homestead farm, which he gave to his only child, and added, "It is further my will that the said Amy reside on the aforesaid farm after my decease, and take proper care of the same. In case they (I mean Amy and her husband) should not see proper to move on the same, then I order my executor to sell the same farm at public vendue to the highest bidder; but there is nothing herein contained that affects the dower of $400 devised to my wife aforesaid." Testator died in 1869, and shortly afterwards Amy and her husband removed to the farm and occupied it for two years, when they leased it until 1880, and then returned, and now reside thereon.—*Held,*

(1) That the gift of $4,000 to his wife was absolute

Casper *v.* Walker.

(2) That Amy's estate in the farm was a fee simple, chargeable with the annuity of $400, and not defeasible on her ceasing to reside thereon.

Bill for construction of will.

*Mr. C. H. Sinnickson,* for complainant.

THE CHANCELLOR.

Ebenezer Peterson died in 1869, leaving his widow, Clarissa C., and his daughter Amy, his only heirs at law, surviving. By his will he provided as follows: "I give and bequeath unto my beloved wife, Clarissa C. Peterson, the sum of $4,000, the same to be put at interest in some safe investment, and secured to her during her natural life." "Also, I give and bequeath unto my said wife the annual income of $400, to be paid half-yearly from the farm where I now reside, in the township of Lower Penn's Neck, purchased of Thomas D. Bradway; the said income to be paid in full, without any de-

---

NOTE.—The following cases show what words confer on a devisee the *right* to reside on the lands devised :

That testator's daughters should not be deprived of a home while they remained single (*Nelson* v. *Nelson, 19 Ohio 282*); that a mother "may be permitted to occupy" lands devised to testator's children (*Snowhill* v. *Snowhill, 3 Zab. 447*); that "C. shall have a home, during her natural life, on the farm hereinbefore bequeathed to W." (*Willett* v. *Carroll, 13 Md. 459*); that "I also allow my son to give her [testator's widow] a support off my plantation during her life" (*Hunter* v. *Stembridge, 12 Ga. 192;* see *Cabeen* v. *Gordon, 1 Hill's Ch. 51*); that "T. take care of his grandmother as long as she lives; and she is to live on the land I now live on, and to have the benefit of living on it as long as she may live" (*Gentry* v. *Jones, 6 J. J. Marsh. 148*); that testator's daughter should have "the use and improvement of so much of my house as she may need during her life, and also a privilege at the fire, which I have made for my wife, while they live together" (*Kingman* v. *Kingman, 121 Mass. 249*); that testator's widow, to whom a house had been given for life, should "keep his house open to any of his children that may be or have been indigent or unfortunate" (*Lewis* v. *Reed, 10 Ga. 293*); that testator's widow have "the reasonable use of two suitable rooms in the house that we may happen to dwell in at the time of my decease" (*Beeson* v. *Elliott, 1 Del. Ch. 363*); "the full privilege of the house, and water and firewood" (*Craig* v. *Craig, Bail. Eq. 102*); "as a residence for her [testator's widow] and any of my daughters who may remain single" (*Rivers* v. *Rivers, 9 Rich. Eq. 203*); "the use of

Casper *v.* Walker.

ductions for taxes or other expenses, this being my expressed wish and will. Also, I give and bequeath unto my beloved wife, Clarissa C., the choice of all my household goods and furniture, or the whole of them, if she chooses, without any reservation."

"I give and bequeath unto my daughter, Amy R. Turner, wife of Jonathan I. Turner, the homestead farm where I now reside, in the township of Lower Penn's Neck, adjoining lands of John Dunn and Elijah W. Dunn, containing about 105 acres, more or less, save the legacy of $400 per year payable to my wife, Clarissa, as above specified."

"It is further my will that the said Amy R. Turner reside on the aforesaid farm after my decease, and take proper care of the same. In case they (I mean Amy R. Turner and her husband) should not see proper to move on the same, then I order my executor, hereinafter named, to sell the same farm at public vendue to the highest bidder; but there is nothing herein con-

---

the mansion-house and furniture, and usual family accommodations" (*Pinckney* v. *Pinckney, 2 Rich. Eq. 218*); "and to live and remain, as long as she is unmarried, in my house, and enjoy the same privileges as she now does" (*Maeck* v. *Nason, 21 Vt. 115*); "my wife is to have a home and good support as long as she lives on the home premises—board and clothing, etc." (*Goodrich's Case, 38 Wis. 492*).

A devise to testator's wife for life, and then, "It is my wish my son W. should live with his mother;" and after her death the fee to be his own, gives no present estate in the land to W. (*Head* v. *Head, 7 Jones 620*). A devise of a lot for life, and of $10,000 to enable the devisee to build a house thereon, does not compel him to build the house (*Ashe* v. *Ashe, Rich. Eq. Cas. 380*; see *Five Points House* v. *Amerman, 11 Hun 161*; *Beck's Appeal, 46 Pa. St. 527*).

The following words were held to render the devise *conditional* upon the devisee's residence on the premises: that "if A. refuses to dwell there himself, or keep in his own possession" (*Doe* v. *Hawke, 2 East 481*); that "every such person shall live and reside on the said estate called Juts" (*Fillingham* v. *Bromley, Turn. & Russ. 530*); that the use and enjoyment should be offered, rent free, to his eldest child for the time being, as long as he or she should please, and in case of refusal, or of his or her ceasing to occupy the same, then to his other children in succession (*Maclaren* v. *Stainton, 4 Jur. (N. S.) 199*); that the devisee should "reside" in the mansion-house for six months in every year (*Walcot* v. *Botfield, Kay 534*); that the devisee's estate should be forfeited in case he did not make the mansion-house "his usual and common place of

tained that affects the dower of $400 devised to my wife afore-
said."

"Further, I order and direct the balance of my personal
property, after securing the $4,000, to be equally divided be-
tween my wife, Clarissa C., and my daughter, Amy R. Turner."

The $4,000 have been duly invested, and the interest paid to
the widow. The questions submitted are: What interest does
the widow take in the $4,000? what estate does the daughter
take in the farm under the devise thereof to her? and is that
estate defeasible on her ceasing to reside on the property?

The gift of $4,000 to the testator's wife is absolute in its
terms. It is not given over in any event, either expressly or by
implication. The will, indeed, provides that it shall be invested
for and secured to her during her life; but that is merely a pro-
vision as to the manner of its enjoyment by her during her life;
the gift of the fund is, nevertheless, absolute, subject to the quali-
fying trust. *Woodward* v. *Woodward, 1 C. E. Gr. 83; Kay* v.

---

abode and residence" (*Wynne* v. *Fletcher, 24 Beav. 430*); that the person en-
titled should, with his family, reside at the mansion-house, and make it his
principal place of abode (*Dunne* v. *Dunne, 3 Sm. & Giff. 22, 7 De G. M. & G.
207*); "on the express condition only that she remove into and live in said
house, herself and family" (*Hart* v. *Chesley, 18 N. H. 373*); "that my wife is
to keep my children, and raise them, and give them a sufficient schooling"
(*Crawford* v. *Patterson, 11 Gratt. 364*); that a plantation be given to E.
and M., "provided they come and live on it" (*Lowe* v. *Cloud, 45 Ga. 481*);
that "B. should remain on the farm," and pay certain charges (*Lindsey* v.
*Lindsey, 45 Ind. 552*); that lands should go to O., "providing he shall live
on the place, and carry it on in a workmanlike manner (*Marston* v. *Marston,
47 Me. 495*. See, further, *Moore* v. *Gamble, 1 Stock. 246*).

But a condition that if any of the devisees "shall not settle on my land, or
those now settled will not remain on said land, but will remove off and leave
the same," was deemed void (*Pardue* v. *Givens, 1 Jones Eq. 306*); so, a devise
to testator's children, "in case they continue to inhabit the town of H." (*New-
kerk* v. *Newkerk, 2 Caines 345;* see *Reeves* v. *Craig, 1 Winst. 209; Keeler* v.
*Keeler, 39 Vt. 550; Wren* v. *Bradley, 2 De G. & Sm. 49; Ross* v. *Iles, 20 W.
R. 858*); so, if a devisee should *not* cease to reside in S., within a limited time
(*Wilkinson* v. *Wilkinson, L. R. (12 Eq.) 604; Forward* v. *Thamer, 9 Gratt. 537*).

The following words were held not to be conditional, but that the devisee
might reside elsewhere without forfeiting the devise; that testator's wife
"shall have her maintenance off of the farm devised to J. while she lives,

*Kay, 3 Gr. Ch. 495 ; Hawk. on Wills 268 ; Gulick* v. *Gulick, 10 C. E. Gr. 32 ; S. C. on appeal, 12 C. E. Gr. 498.*

The devise of the homestead farm to Amy is in fee, subject to the charge of the annuity to the widow. It is not defeasible by her non-residence on the property. The testator declares that it is his will that Amy reside on the farm after his death, and take proper care of it, and provides that in case she and her husband should not " see proper to move on the same," his executor sell it. He adds a further provision that such conversion of the farm into money shall not affect the gift of the annuity charged thereon in the devise. Amy is the testator's only heir at law. He died, as before stated, in 1869. Soon after his death, Amy and her husband removed to the farm, and resided there for about two years. They then leased it, and it was occupied by their tenant. In the spring of 1880 they returned to it, and ever since then have resided thereon.

The intention of the testator, in the provision under considera-

---

* * * that J. is to let her have the house while she lives, and to furnish her with everything necessary to her comfort" (*Tope* v. *Tope, 18 Ohio 520*); that she should have " a comfortable room " and " sufficient maintenance during her natural life " (*Steele's Appeal, 47 Pa. St. 437*); that " my five daughters shall have a home in the house, and a reasonable and moderate support, during their single lives, from the said farm "—not lost by one becoming a sister of charity (*Donnelly* v. *Edelen, 40 Md. 117*); that " I give unto my wife E. the use of that part of my house which I now occupy, during her widowhood, and her full and comfortable support," &c., (*Van Duyne* v. *Van Duyne, 1 McCart. 49*); that A. should have " the right to occupy and possess my estate called Bellegrove, and the furniture, &c., there or elsewhere, during her natural life and widowhood" (*Kearney* v. *Kearney, 2 C. E. Gr. 59, 504;* see *Murphy* v. *Murphy, 20 Ga. 549*); that a son to whom a farm had been given " afford a lawful maintenance to my daughter A. and her two daughters, from said farm, as long as they live and shall want the same," and that " A. shall abide and have a lawful maintenance, and her two daughters with her, on said farm, as long as the said A. lives and her two daughters shall want their maintenance "—as to the daughters after A.'s death (*Stillwell* v. *Pease, 3 Gr. Ch. 74*); that " my mother is to have her support on my estate, to the amount of forty dollars a year, if she chooses to remain on my estate, and if she chooses to go away, she is to be paid the sum of forty dollars a year during her natural life,"—and she goes away, the devisee is still liable, and not the executor (*Henry* v. *Barrett, 6 Allen 500*); that " it is my desire that my son

Casper *v.* Walker.

tion, was not to defeat the devise to his daughter, but to secure the property against want of care. He not only does not provide that, in case of non-compliance with his direction, the farm shall go over to some one else, but he makes no provision whatever in that connection, except that the farm be converted by his executor into money, by sale. He makes no disposition of the proceeds of the property after conversion. The residuary clause is confined by its terms to his personal estate. If the farm were converted under this provision, the proceeds subject to the annuity would go to Amy, under the devise; and, apart from that, it would go to her as heir. The annuity is given expressly in lieu of dower. That the testator did not mean to provide that his daughter should reside on the property for life is evidenced by the use of the word "move" in the second clause. In the first, he expresses his desire that she and her husband should reside on the farm and take proper care of it. In the second, he orders that if they do not "see proper to move on"

---

Aaron remove back to this country, and to have them [slaves], but not to take them to any other part of the country" (*Harris* v. *Hearne, Winst. Eq. 91*).

The devisee might let the premises to another; that testator's two sons might have the "use and occupation" of certain lands, by paying a stated rent (*Rabbeth* v. *Squire, 19 Beav. 70*); that W. "may have the choice of those two rooms which shall the best suit her, because I desire that the said W. should be sure of a shelter during the time she may live" (*Wusthoff* v. *Dracourt, 3 Watts 240*); that a widow might have "the free use and enjoyment of the portions of the house" which she and testator then occupied (*Tobias* v. *Cohn, 36 N. Y. 363*); "the free occupancy of any house in my possession, for her life, free of any payments or charge whatever" (*Mannox* v. *Greener, L. R. (14 Eq.) 456*).

See, further, *Trammel* v. *Johnston, 54 Ga. 341; Whittome* v. *Lamb, 12 M. & W. 813; Thomas* v. *Boyd, 13 Ind. 333; Davis* v. *Vincent, 1 Houst. 416; Smith* v. *Jewett, 40 N. H. 530.*

The devise is not forfeited if the condition be broken by the act of God, as by death (*Sutcliffe* v. *Richardson, L. R. (13 Eq.) 607; McLachlan* v. *McLachlan, 9 Paige 534; Sampson* v. *Down, 2 Chit. 529;* see *Hayward* v. *Angell, 1 Vern. 222*); or insanity (*Burns* v. *Clark, 37 Barb. 496*); or by destruction of the house devised, by fire (*Schanck* v. *Arrowsmith, 1 Stock. 314, 330; Tilden* v. *Tilden, 13 Gray 103*); or by leaving the premises through constraint (*Jordan* v. *Clark, 1 C. E. Gr. 243; Roe* v. *Roe, 6 C. E. Gr. 253; Craven* v. *Bleakney, 9 Watts 19; Hogeboom* v. *Hall, 24 Wend. 146; Huckabee* v. *Swoope, 20 Ala. 491;*

Casper *v.* Walker.

the property, the executor is to sell it. There is no evidence of any intention on his part to compel his daughter to reside on the farm, as a condition of her title to it under the devise. The language of the first clause is merely expressive of his desire. It has no mandatory character, but is merely precatory. The provision, taken altogether, is as if he had said that his daughter and her husband occupy his homestead farm, as their home, immediately after his death, and enter on such occupation and care for it accordingly; but if such should not be their wish, then, in order to secure it against depreciation from want of care, he directed that it be converted into cash, the sale to be subject to the annuity-charge, but the proceeds to go to his daughter. The daughter moved to, and resided on, the farm for about two years, and then leased it, and again removed to it, and now resides thereon. There is no provision that in case she, having moved to it, leaves it and ceases to reside there, the property shall be sold, but merely that it shall be sold if she does not see proper to move there at all. The provision for sale is limited in its operation by its terms, and there is no reason for going beyond the literal import of them. To do so would be to ex-

see *Philips* v. *Walker*, *2 Bro. P. C. 198*); or by taking possession of the premises with a *bona fide* intention of permanently residing there, and subsequently removing (*Brundage* v. *Domestic Soc., 60 Barb. 204; Hunt* v. *Beeson, 18 Ind. 380*); or by going to sea (*Shaw* v. *Steward, 1 A. & E. 300*); or by temporary absence (*Hart* v. *Chesley, 18 N. H. 333;* see *McKissick* v. *Pickle, 16 Pa. St. 140*)—*aliter,* as to an absence of several years (*Crawford* v. *Patterson, 11 Gratt. 364*); or by the bankruptcy of the devisee (*Goldney's Case, 3 Deac. 570*); or by impossibility of performance through testator's act (*Bunburry* v. *Doran, Ir. L. R. (8 C. L.) 516, (9 C. L.) 284; Hearn* v. *Cannon, 4 Houst. 20 ; Martin* v. *Ballou, 13 Barb. 119; Lamb* v *Miller, 18 Pa. St. 448; Walker* v. *Walker, 2 De G. F. & J. 255*); or by operation of law (*Adams* v. *Bass, 18 Ga. 130; Curry* v. *Curry, 30 Ga. 253; Miller* v. *Lewis, 33 Ga. 61; Tennille* v. *Phelps, 49 Ga. 532; Maddox* v. *Maddox, 11 Gratt. 804*); or by the voluntary release or waiver of the person entitled to a performance (*Jones* v. *Bramblet, 1 Scam. 276; Petro* v. *Cassiday, 13 Ind. 289; Boone* v. *Tipton, 15 Ind. 270; Rush* v. *Rush, 40 Ind. 83; Crawford* v. *Woods, 6 Bush 200; Wilson* v. *Wilson, 38 Me. 18; Simonds* v. *Simonds, 3 Metc. 558; Spaulding* v. *Hallenbeck, 39 Barb. 79; Brewster* v. *Brewster, 4 Sandf. Ch. 22; Buckmaster* v. *Needham, 22 Vt. 617; Wells* v. *Wells, 37 Vt. 483;* see *Frost* v. *Butler, 7 Me. 225; Manwell* v. *Briggs, 17 Vt. 176 ; Hubbard* v. *Hubbard, 12 Allen 586).*—REP.

tend them indefinitely; for it would not even be limited by, and cease with, the annuity. Such construction would give the executor power to sell whenever the daughter should cease to reside on the farm. The testator undoubtedly contemplated no such construction. What he meant was, that in case his daughter should not be willing, at his decease, to enter on the occupancy of the farm as her residence, it should then be sold; and if sold, it should be sold subject to the annuity, and the proceeds of the sale should go to her. He did not intend to cloud her title with an ever-impending power of sale. The executor has not now, and will not have, any duty in respect to the sale of the farm.